Good morning, Your Honors. My name is Kimberly Wright. I represent Frederick Scott Salyer and the Scott Salyer Revocable Trust, the appellants. Today, I would like to focus on two points, the first being the denial of the motion to transfer and dismiss, which will touch on inequitable result, and the other being the no opportunity to defend, which will address the Toho case, focusing on substantial evidence. First, I just want to point out, with respect to the motion to transfer and dismiss, that the trial court focused on the case pace setter, but in that case particularly, the trial court had really analyzed the two complaints to come to the determination that the issues were identical. They looked at the central questions in both of the cases. They noted that they had the same parties and that the two actions differed only with respect to the remedy that was being sought. Even though the underlying court in this case quoted pace setter, focused on pace setter, it really dismissed the action that they were presented with, with the bankruptcy court's substantive consolidation case, in which it was the same parties. The trustee of the bankruptcy court was focusing on alter ego. In fact, a findings of fact and conclusions of law was finally issued in the substantive consolidation case, and in those findings of fact. Kagan. Has there been substantive consolidation in the bankruptcy matter? Yes. Consolidating Salyer. Well, that's what's interesting. It did not consolidate Salyer. It excluded Salyer and the trust, but it did consolidate SKPM court, which, interestingly enough, the lower court here chose to consolidate Salyer and the trust, but not SKPM court. And so you're arguing that this shows that there should have been a stay or a transfer? Or a dismissal. And why was why did the district court abuse its discretion in deciding that because there was this jurisdictional question about whether the bankrupt entity was in this case that maybe there was no jurisdiction? Why wasn't that a proper exercise of discretion? Well, my opinion is, is that the trial court was really focusing on the fact that it would be unfair to Bank of Montreal to have allowed, let's say, Salyer. I guess the argument was that Salyer had transferred certain assets in an international company. And so to then transfer those assets and then, you know, claim that, you know, Bank of Montreal, you can't recover, we can't add Salyer, and that has to do well. I mean, now it sounds like you're going to the merits of whether they should have amended the judgment, but I thought you were. No, I'm not saying it was what I'm saying is, is that it was an abuse of discretion insofar as, how do I say this, I think their focus was, and I have it here, it was to the point of, it had to be. So your position is the district court should have transferred the case, stayed or stayed, to the bankruptcy court. Yes, because while the timing ---- It works the other way around. Well, there was, I believe, over 100 adversary proceedings in the bankruptcy court that all related to the debtor. So, you know, I would have ---- So why wouldn't it have been a proper exercise of discretion to think the bankruptcy court is overwhelmed, we should just deal with this case here? I mean, it was within the district court's discretion whether to transfer or not. What do you have that says it was actually an abuse of discretion to keep this case? Well, I would say it's looking at the totality of the circumstances. The substantive consolidation case had been ---- was filed with the bankruptcy court in January of 2010. Bank of Montreal got their decision in Illinois in May of 2010. There was a stay that was issued by Judge Carlton in the Eastern District, which, based on the criminal case, you know, there are multiple cases involved here. So Carlton issued the stay in June of 2011, and it was at that point in August of 2010, shortly after, that Bank of Montreal filed in the Northern District. I believe it's an abuse of discretion because of what the lower court focused on. They didn't really take the time to vet out, you know, the procedural issues or even look at the two complaints, like using Paysetter, you know, they're focused on Paysetter, but they're not doing what the court prescribed in Paysetter by giving it, you know, a due diligence and look, you know, fleshing out the arguments in both cases, which is why I'm saying it's interesting. In the findings of fact and conclusions of law that Honorable Judge Bardwell issued in the bankruptcy court, a large portion of it is literally discussing alter ego and single enterprise. So, and what was even more interesting is that the trial court in its decision highlighted in one of its footnotes Rule 59E and stated that there was no timing issue, that 28 days doesn't apply when bringing a motion to amend because the whether or not you add a judgment debtor does not go to the merits of the case. So Bank of Montreal didn't have to bring this action in the Northern District at the time it did. The Northern District didn't have to decide the case because, you know, it was sort of forced into it because there is this rule that use it or lose it. But you haven't pointed to anything that precludes it from keeping the case, and it's an abuse of discretion standard. My argument is it's to the weight of the evidence that they used. You know, abusing the discretion, do they have discretion? Yes. I do not deny the fact that the court didn't have the discretion to make this decision. But with the overwhelming evidence, with, you know, seeing that actually what did happen was inconsistent judgments, it seems that had they been not, well, you're saying now that you think they're inconsistent judgments. But at the time that the district court had to make this decision, the district court didn't know that, didn't know what would happen, but knew that it had this question about whether there even would be jurisdiction if they gave this case to the bankruptcy court. And so why isn't that a proper question and a reason to keep the case? My opinion is that the evidence was overwhelming to the court of the possibility of there being inconsistent judgments. We had multiple cases in the bankruptcy court that was dealing with these same parties that had been pending for years. And I think that now that you say that they're inconsistent judgments, what problem is that causing for you? Well, the problem that it's causing is that, for example, this, the trial court said that SKPM Corp. should not be added as a judgment debtor to pay the assets of, or excuse me, the liabilities to Bank of Montreal. You have Subcon saying that they are. They also subconsolidated the guarantor. But Salyer and the trust are not liable for, or weren't subconsolidated. But so here the court says Salyer is liable. So why can't we just proceed with that? What's the problem with the bankruptcy court doing something different on a different question, or even a similar question? I'll give you that it's a similar question. But I think that's sort of the ultimate point, is that they're basing it on the same  I mean, subconsolidation, bankruptcy. So maybe the bankruptcy court made an error by not, by an issue preclusion problem, but that's not our district court's problem, right? We're reviewing what the district court did. You could say later maybe the bankruptcy court had to defer to what the district court did here, but we're reviewing the district court. What did the district court do wrong? In my opinion, the district court failed to adequately review all the information regarding the two, the two cases. How do we know that? Well, because in their decision, they, they just brush it off. Their focus in choosing not to amend, or excuse me, not to dismiss or transfer was simply that they're going to save the investigation of would the bankruptcy court have jurisdiction. So it didn't really go to, you know, let's do an analysis here of whether this will result in inconsistent judgments. Are there similarities or anything like that? It was simply, you know what, we, we're just going to proceed on because we can. We have this discretion. It's a liberal discretion. And we're going to, you know, prevent this investigation into whether or not Bank of Montreal could have that. Sotomayor, did you say we're going to prevent this investigation? No, we're going to make, you know, yeah, well, yes. I think the language that they used was by choosing to keep the case, it would have been because they had concern as to whether the bankruptcy court had jurisdiction. Yes. But that was their whole focus. I don't think the word prevent was used, though, which would have a different connotation. Have you presented us with an argument that this idea that there might not have been jurisdiction in the bankruptcy court was crazy for some reason? I mean, I don't, I haven't seen you arguing that was, should never have been a concern, it was an abusive discretion for that to even be a concern because the bankruptcy court clearly had jurisdiction. I don't think you made that argument. I'm not making the argument. I haven't chosen to address whether or not the bankruptcy court would have had jurisdiction. But that's not the issue. The issue is, was it arbitrary for the district court to have that concern? No, I don't believe that it was arbitrary. I mean, so then that means it wasn't an abusive discretion to keep the case, right? Well, what I'm saying is, is that in the totality of the circumstances, Bank of Montreal is, was the guarantee, was guaranteeing a $200 million loan to, you know, SK Foods LP. So they are the biggest creditor in the bankruptcy estate, you know, with who, you know, let's get all the assets together because really Bank of Montreal is who we owe. There's no dispute about them being the largest creditor. The question asked you who was the debtor. Right. The debtors were in the bankruptcy. So it wasn't the fact that Bank of Montreal being the biggest creditor, it was whether or not the debtors in that bankruptcy were the, were the ones that were pertinent. But again, with subconsolidation, all of the, you know, all the related entities were now merged together and they were to pay the creditors, which was after the fact. Correct. But again, the timing issue, Bank of Montreal didn't have to rush to the bankruptcy. But could. Right. Right. And you abandoned the argument in the district court, didn't you, that, that going to get this judgment amended violated the automatic stay? You mean I abandoned? Well, so, as I understand it, there was a declaration from the trustee in the district court, docket number 31, saying that the trustee did not think there was a problem with the automatic stay. And after that, your briefs to the district court didn't make the argument that it violated the automatic stay anymore. Well, when it was finalized, it was finalized. And when it was filed, there was a stay. But it seems very self-serving for a trustee to say, you know, ultimately Bank of Montreal, we have to pay you, the state has to pay you, you know, let's, I have no problem with you going to do that, because it's going around the stay and the bankruptcy and putting it in another court, in my opinion, it is form-shopping. But your client could have maintained the position that the stay had been  violated, and that doesn't preclude your client from maintaining the objection. I don't know. It's hard to address that. I mean, I can't say it. That was not my point. And in your opening brief, you didn't make that argument here either, right? You had one sentence that arguably hinted at it, but it really wasn't until your reply brief that you started arguing about that, right? Correct. Correct. I do want to move on to Toho, if that's okay, because you had asked to bring it up. So I believe that Toho helps us. So assuming everything else, putting that all aside, the court in Toho focused and it, although it found that MCP would be added as a judgment debtor, the analysis that Toho focuses on with respect to NEC, the preceding case, would determine that in the NEC case, the matter went, excuse me, uncontested due to the fact there only being a general denial. There was a, they were contemplating bankruptcy. And in the trial court, they noted that NEC is completely different than what we have here, because SK Foods LLC was not contemplating bankruptcy. But I don't think that that's the spirit of the law, because I think the point is, is that if you are taking in consideration a company that really would have no defense, or chooses not to have a defense, because one But they litigated for a year, right, before they dropped, before they stopped. By they, you're talking about SK Foods, correct? Yeah. I mean, yes, there was a, they responded, I think they filed an answer. There was a motion for an extension. And there was the motion to transfer. So they did all those things, even though you claim they had no defenses? So that's different from NEC, isn't it? Well, NEC, though, was focusing on the fact that there was financing of litigation. You know, obviously hiring attorneys, you have to hire attorneys to do these motions. You mean CHOHO? You said NEC had funds. The NEC court focused on the controlling the course of litigation. But NEC also said having the awareness of the litigation is not enough. Even in NEC, they did, they filed the general denial. But NEC, in my opinion, I'm sorry, I'm saying CHOHO quoting NEC. Sorry, sorry. Forgive me. I got. But CHOHO itself is different because it's saying you have the response of pleading. They engaged in discovery. They opposed the summary judgment. They pursued JAMS appeals. I mean, again, the focus is the substantial evidence showing that NEC is not the only one. Who else was controlling the litigation here other than Salyer? I don't know. Is there anyone else? I don't even know if Salyer was controlling it. Well, he was. We know that he consulted about the withdrawal of the attorney. Is there anyone else you could tell us might have been supervising this litigation for the year that it proceeded? No, I can't. I can't tell you that. I do know that the record on 258 has the letter to Mr. Heiser from Salyer's family's attorney that says that they're looking for somebody. But as of right now, they can't find anybody. But again, it kind of goes to the CHOHO NEC situation. Awareness of the litigation is not enough. I mean, Salyer was in prison at that time, I believe, for eight months. So whether that rises to the level, though, of, you know, at least that's just like I see those cases being distinguished by the facts of the matter here. A motion to transfer or a motion for an extension of time in looking for somebody who can make the decisions falls short, in my opinion, than the string of cases from CHOHO to NEC all the way down to Farrenbaugh and Minton and Dow Jones where they're really focused on defending the summary judgment hearing, active defense of the underlying claim with debtors' exams, testimony at trial, deposition. I believe in this situation, it doesn't rise to the level of falling in line with all those cases. All right, thank you, counsel. You've exceeded your time. I'm sorry. We'll hear from opposing counsel. Thank you. Good morning. May it please the Court. Jim Heiser on behalf of Apple Leaf Bank of Montreal as administrative agent. The district court in this case gave Mr. Salyer more than three opportunities to respond on the merits to the allegations and the evidence that BMO had submitted to the Court and Mr. Salyer failed to do so. Yet the district court carefully weighed the evidence that BMO submitted and found for Salyer on some points, but found that in the totality of the circumstances that BMO was entitled to the relief that it sought. And BMO respectfully submits that the district court did not clearly err in amending the judgment when it relied on this uncontested evidence. With respect to the motion to transfer, as the court noted that this is reviewed for abuse of discretion and the district court looked at the complicated jurisdictional issues that would arise if the matter had to be transferred to the bankruptcy court and made a determination that it would be easier to decide the issue in the northern district proceeding that BMO had initiated when Mr. Salyer was domiciled. And so I don't think that there's been any showing or anything in the record from which an abuse of discretion could be found. And finally, with respect to Mr. Salyer's request for a stay based on his Fifth Amendment rights that's identified in the brief, here, again, the district court waited a long period of time until the district court that was overseeing Mr. Salyer's criminal case had already determined that Mr. Salyer's Fifth Amendment rights would not be a basis for a stay of further civil litigation against him. And so for all of these reasons, I don't think that that refusal to grant a stay constituted an abuse of discretion in that instance. And I'm happy to address any questions that the court may have. It appears there are none. Counsel, you've exceeded your time, but we'll give you a minute for rebuttal if you'd like it. The only thing I wanted to bring up is to further the point of substantial evidence. The court itself says in its memorandum Addressing the motion to stay, transfer, or dismiss? Substantial evidence for what? Substantial evidence for finding that there was an opportunity to defend. Yes, sorry. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the week, and we are adjourned.
judges: Marshall, Rawlinson, Friedland